IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL CONNOLLY,                       :
                                        :
                 Plaintiff,             :   CIVIL ACTION
                                        :
    v.                                  :   NO. 12-cv-0315
                                        :
C/O JOSE OQUENDO, ET AL.,               :
                                        :
                 Defendants.            :

## MEMORANDUM & ORDER

**Joyner**, J.                                          August 8, 2013

Before this Court is Defendant Prison Health Service's Motion for Summary Judgment (Doc. No. 34). The Plaintiff has failed to respond to this Motion. In accordance with Local Rule of Civil Procedure 7.1(c), we will consider whether summary judgment is warranted under Fed. R. Civ. P. 56. For the reasons set forth in this Memorandum, the Court will grant the Defendant's Motion.

## I. FACTUAL & PROCEDURAL BACKGROUND

The claims in this case stem from three separate incidents that occurred while the Plaintiff, Michael Joseph Connolly ("Connolly" or "the Plaintiff"), was incarcerated at the Philadelphia Detention Center ("PDC") in 2011.[1] The incidents at issue occurred in July and September of that year. The Plaintiff

---

[1] Because the Plaintiff has failed to respond to the Defendants' Motion, the Court recounts his statement of the events as set forth in the Complaint. The Court recounts facts as supported by the evidentiary record in the Discussion section where the Plaintiff's claims against PHS are evaluated.

1

alleges that on those dates, one or more of the Defendant Correctional Officers subjected him to excessive physical force. (Compl., at ¶¶ 40-45, Doc. No. 5).[2]

The Plaintiff also alleges that Defendant Prison Health Services ("PHS" or "Defendant"), a private company that the Philadelphia Prison System ("PPS") contracts to provide medical care to inmates, provided him with inadequate mental health care and allowed him to be tortured in their facility. (Compl., at ¶ 46, Doc. No. 5). In particular, the Plaintiff alleges that PHS: (1) denied him "proper mental health care by not prescribing [Remeron and Xanax] which Plaintiff has been taking since 1997"; (2) enforced "a policy of not prescribing any sleep inducing medication for unexplained reasons" which caused a number of ill effects to his health; and (3) "was responsible for [Plaintiff] being kept in the psych ward handcuffed for a long time and tortured by [correctional officers]." (Compl., at ¶¶ 32-36, Doc. No. 5).

The Plaintiff properly filed his Complaint alleging violations of 42 U.S.C. § 1983 on April 24, 2012. The case proceeded to discovery after Defendant Correctional Officers and Defendant PHS filed separate answers to the Complaint. (Doc. Nos. 7 & 10). On April 17, 2013, counsel for the Defendant

---

[2] Because the Defendant Correctional Officers have not moved for Summary Judgment, the Court need not recount the facts alleged by the Plaintiff that relate to his claims against them. These allegations are noted only where they relate to the claims against PHS.

2

Correctional Officers and counsel for PHS deposed the Plaintiff. On May 16, 2013, PHS filed this Motion for Summary Judgment. (Doc. No. 34). The Plaintiff had time to respond, or to move to extend the time to respond, to the Motion; however, the Plaintiff filed no response.

## II. STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party; a factual dispute is material only if it might affect the outcome of the suit under governing law. Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In conducting our review, we view the record in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Bowers v. Nat'l Collegiate Athletic Ass'n, 475 F.3d 524, 535 (3d Cir. 2007); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, the non-moving party cannot rely on "bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005). When the non-moving party is the plaintiff, she must

"make a showing sufficient to establish the existence of [every] element essential to [her] case and on which [she] will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

### III. DISCUSSION

Before we turn to evaluate each of the Plaintiff's claims against PHS, we set forth the legal standards that govern the Plaintiff's claims.

**A. Legal Framework**

1. Section 1983

Section 1983 "imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." Schuman ex rel. Shertzer v. Penn Manor Sch. Dist., 422 F.3d 141, 146 (3d Cir. 2005). To establish a claim under Section 1983, "the plaintiff must demonstrate that the defendants, while acting under color of state law, deprived him of a right secured by the Constitution or the laws of the United States." Id. Private corporations or individuals that the state contracts to provide medical services to prison inmates are acting under state law for purposes of Section 1983, as such conduct is "fairly attributable to the State." West v. Atkins, 487 U.S. 42, 54 (1988). Therefore, in providing medical services to prisoners, PHS is acting "under

color of state law" for the purposes of Section 1983.

2. Deliberate Indifference to Serious Medical Needs

The government has an "obligation to provide medical care for those whom it is punishing by incarceration." Estelle v. Gamble, 429 U.S. 97, 103 (1976). Accordingly, deliberate indifference to the serious medical needs of prisoners is prohibited by the Eighth Amendment prohibition on cruel and unusual punishment for sentenced prisoners and by the Fourteenth Amendment for pretrial detainees. Id. at 104; U.S. Const. Amend. VIII, XIV.

To state a claim based upon inadequate medical care, an inmate must show that he had a serious medical need and that the defendants showed "deliberate indifference" to that need. Estelle, 429 U.S. at 103. The analysis for such a claim is the same for pretrial detainees as it is for sentenced prisoners. Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 581 (3d Cir. 2003). As such, the Plaintiff had the constitutional right to receive medical care for serious medical needs.

The Third Circuit has set forth three types of medical needs that qualify as serious medical needs. These include needs that are "diagnosed by a physician as requiring treatment," those that are "so obvious that a lay person would easily recognize the necessity for a doctor's attention," and those that are of such a nature that "the denial of treatment would result in the

5

unnecessary and wanton infliction of pain or a life-long handicap or permanent loss." Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d Cir. 2003) (internal citations and quotation marks omitted). Deliberate indifference can manifest in a variety of circumstances, "including where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). "The 'deliberate indifference' standard . . . is applicable in evaluating the constitutional adequacy of psychological or psychiatric care provided at a jail or prison" because "the failure to provide necessary psychological or psychiatric treatment to inmates with serious mental or emotional disturbances will result in the infliction of pain and suffering just as real as would result from the failure to treat serious physical ailments." Inmates of Allegheny Cnty. Jail v. Pierce, 612 F.2d 754, 763 (3d Cir. 1979).

Neither "mere medical malpractice" nor "mere disagreements over medical judgment" are sufficient to establish deliberate indifference, including when one doctor disagrees with the professional judgment of another doctor. White v. Napoleon, 897 F.2d 103, 108, 110 (3d Cir. 1990). "Accordingly, when some medical care is administered by officials, even if it arguably

6

falls below the generally accepted standard of care, that medical care is often sufficient to rebut accusations of deliberate indifference." Burgos v. Philadelphia Prison Sys., 760 F. Supp. 2d 502, 508 (E.D. Pa. 2011). Instead, the deliberate indifference standard requires the culpable state of mind of "obduracy and wantonness," Whitley v. Albers, 475 U.S. 312, 319 (1986), which is comparable to "conduct that includes recklessness or a conscious disregard of a serious risk." Rouse, 182 F.3d at 197.

   3. Monell Liability

A municipality cannot be held vicariously liable under 42 U.S.C. § 1983. Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691 (1978). A plaintiff seeking to hold a public entity liable for the actions of its agents under Section 1983 must show that a custom or policy of the entity caused the constitutional violation. Id. at 694.

Almost every court to have considered whether a private corporation acting under color of state law or performing a municipal function, like PHS, can be held vicariously liable under Section 1983 has held that such a private corporation cannot be vicariously liable. See Taylor v. Plousis, 101 F. Supp. 2d 255, 264 n.4 (D.N.J. 2000) (citing cases that have held so and explaining that policy considerations warrant such a view). In a case where New Jersey's Prison Health Services was a

7

defendant in a § 1983 suit, the Third Circuit explained that "PHS cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability. In order for PHS to be liable, [the Plaintiffs] must provide evidence that there was a relevant PHS policy or custom, and that the policy caused the constitutional violation they allege." Natale, 318 F.3d at 583-84. Therefore, the framework announced in Monell applies to the claims against PHS in this case.

To hold a municipality or private corporation performing a municipal function liable for the actions of its employees in providing inadequate medical care, a plaintiff must show a relevant policy or custom attributable to the municipality and "a direct causal link between the municipal action and the deprivation of federal rights." Bd. of Cnty. Comm'rs of Bryan Cnty., Okl., v. Brown, 520 U.S. 397, 404 (1997). The Third Circuit has identified three relevant situations where acts of an employee "may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983." Natale, 318 F.3d at 584. These situations include: (1) where the employee is implementing a generally applicable policy promulgated by a policymaking authority; (2) the policymaker himself violates the plaintiff's rights; or (3) "where 'the policymaker has failed to act affirmatively at all, [though] the need to take some action

to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'" Id. (quoting Bryan Cnty., 520 U.S. at 417-18) (alteration in original).

It is through these frameworks that we must evaluate the Plaintiff's claims against PHS. The Court will first evaluate the Plaintiff's claim that he was denied proper mental healthcare by not being given medication that he previously took. Then, the Court will turn to the Plaintiff's claim that PHS has a policy of refusing to provide sleep-inducing medication. Finally, the Court will address the Plaintiff's claim that PHS is responsible for alleged abuse at the hands of the Defendant Correctional Officers that occurred in the psych ward.

### B. Denial of Prescription Medication for Mental Healthcare

The Plaintiff's first claim is that Defendant PHS denied him "proper mental healthcare by not prescribing the appropriate medicine which plaintiff has been taking since 1997." (Compl., at ¶¶ 32, 46, Doc. No. 5). Specifically, the Plaintiff claims that he should have received Remeron and Xanax, which he had been taking for years before coming to the Philadelphia Prison System. (Connolly Dep., Ex. B to Def.'s Mot. for Summ. J., at 9:14-10:1, Doc. No. 34-5). This claim against PHS fails. PHS has put forth

9

evidence - which the Plaintiff has failed to contradict - that the PPS contracts another company to fulfill the inmates mental health needs; therefore, PHS had no personal involvement in the Plaintiff's mental healthcare and cannot be liable for inadequate medical care under § 1983.

In an affidavit put forward by PHS in support of its Motion for Summary Judgment, Dr. Eke Kalu, the Regional Medical Director for Corizon (formerly PHS), stated that "[PHS] was not the mental health care provider in the Philadelphia Prison system" during the time of the Plaintiff's incarceration. (Ex. C to Def.'s Mot. for Summ. J., at 2, Doc. No. 34-6).[3] A defendant can only be held liable under Section 1983 if they had some "personal involvement" in the deprivation of the constitutional right. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Where there is no evidence in the record that a defendant was "personally involved - through acts, omissions, or policies - in the allegedly deficient diagnosis and treatment" of the inmate's condition, the defendant cannot be held liable for violating the inmate's rights. Lopez v. Corr. Med. Servs., Inc., 499 F. App'x

---

[3] There is evidence in the record that the Plaintiff was aware that psychiatric care was provided by a company other than PHS. In the Plaintiff's deposition, Defendant PHS's counsel asked the Plaintiff if he was aware of this, and the Plaintiff responded that he was, explaining that Defendant's counsel had notified him of this. (Connolly Dep., Ex. B to Def.'s Mot. for Summ. J., at 9:6-8, Doc. No. 34-5). In fact, the Plaintiff moved to amend the Complaint to add Mental Health, Inc. as a Defendant in September, 2012. (Doc. No. 17). The Court granted this request (Doc. No. 20); however, it does not appear that Mental Health, Inc. has been served or is participating in the case.

10

142, 146 (3d Cir. 2012). Here, there is evidence in the record indicating that PHS was not involved in providing mental health care to inmates in the PPS. (Ex. C to Def.'s Mot. for Summ. J., at 2, Doc. No. 34-6). The Plaintiff has not put forward any evidence to the contrary to create a genuine issue of material fact on this issue. Since there is no evidence that PHS was involved in the mental healthcare at PPS, it can bear no liability for any denial of proper mental healthcare for the Plaintiff.[4] Summary judgment is therefore appropriate on the Plaintiff's claim.

## C. Policy of Refusing to Provide Sleep-Inducing Medication

In the Complaint, the Plaintiff alleges that "PHS has a policy of not prescribing any sleep inducing medications for unexplained reasons that Plaintiff has been asking for," and claims that this has caused the Plaintiff to suffer panic

---

[4] There are two additional reasons why summary judgment in favor of Defendant PHS is appropriate on this claim. First, there is no evidence in the record of a policy or custom of refusing to prescribe medications that an inmate had previously been taking, as required under Monell. 436 U.S. at 694. Second, even if the Plaintiff had alleged such a policy, there is no evidence that the failure to prescribe these medications rose to the level of deliberate indifference to the Plaintiff's serious medical need. Just because the Plaintiff's pre-incarceration mental healthcare provider prescribed a particular medication does not mean that the prison physician was obliged to continue that line of treatment; there are frequently "several acceptable ways to treat an illness." White, 897 F.2d at 110. There is evidence in the record that the Plaintiff was given Zoloft and Paxil, which treat depression like Remeron, and Buspar and Ativan, which treat anxiety like Xanax. (Connolly Dep., Ex. B to Def.'s Mot. for Summ. J., at 18:16-20:10, Doc. No. 34-5; Ex. F to Def.'s Mot. for Summ. J., filed under seal). Therefore, there is evidence that the Plaintiff did receive medication for the conditions of which he complained, just not the specific medication he had been taking previously. This complaint does not meet the rigorous standard for deliberate indifference, and we will not second-guess the propriety or adequacy of this course of treatment. See Pierce, 612 F.2d at 762.

attacks, aggression, depression and bad health and has caused the Plaintiff's HIV and other ailments to become worse. (Compl., at ¶¶ 33-35, Doc. No. 5). This claim against PHS also fails to survive summary judgment. There is no evidence in the record of any such policy, or evidence that such a policy caused the numerous ailments that the Plaintiff alleges. For a valid claim against a municipality, or a private corporation performing a municipal function, there must be a custom or policy that causes the constitutional violation. Monell, 436 U.S. at 694; see also Brown, 520 U.S. at 404 (requiring a causal link between the municipal action and the deprivation of federal rights). Without any evidence of such a policy, which neither Defendant PHS nor the Plaintiff has provided, Defendant PHS cannot be held liable for the Plaintiff's alleged injuries. As such, the Court grants summary judgment in Defendant PHS's favor on this claim.[5]

### D. Abuse by Correctional Officers in the Psych Ward

The Plaintiff alleges that "PHS was responsible for [the Plaintiff] being kept in the psych ward handcuffed for a long time and tortured by [correctional officers]," stating that this

---

[5] Again, there is an additional reason to grant summary judgment on this claim. There is evidence in the record that the prescription of sleep-inducing medication was not the responsibility of PHS. PHS's counsel asked the Plaintiff in his deposition whether he saw anybody in the mental health department for the lack of sleep that he complained of, and the Plaintiff answered in the affirmative. (Connolly Dep., Ex. B to Def.'s Mot. for Summ. J., at 10:13-16, Doc. No. 34-5). But as established in the previous section, PHS did not provide mental healthcare in the PPS at the time. Therefore, the Plaintiff's allegation against PHS for its failure to provide sleep-inducing medication appears to be the result of the Plaintiff's mistake over the identity of the inmate healthcare provider in the PPS.

12

occurred "on their watch in their facility."  (Compl., at ¶¶ 36, 46, Doc. No. 5).  This claim is also properly subject to summary judgment, because there is no evidence in the record to support this allegation.

The Plaintiff does not allege, let alone set forth evidence to show, that PHS employees kept him handcuffed in the psych ward and tortured him; rather, he alleges that the correctional officers were responsible for this conduct.  PHS can only be liable for constitutional harms with which it or its employees had some "personal involvement."  Rode, 845 F.2d at 1207.  Just as PHS cannot be liable for insufficient mental healthcare if it is not responsible for providing mental healthcare, PHS cannot be responsible under § 1983 for the alleged actions of correctional officers that it does not employ.[6]  As the record is devoid of evidence of such an altercation or any involvement of PHS employees, summary judgment is proper on this claim.[7]

## IV.  CONCLUSION

For the foregoing reasons, the Court grants the Defendant PHS's Motion for Summary Judgment in full.  A separate order follows.

---

[6] The Plaintiff stated during his deposition that he sued PHS for this claim because "the first incident happened in the hospital area, so I assumed that [PHS was] responsible for anything that happened in that building." (Connolly Dep., Ex. B to Def.'s Mot. for Summ. J., at 12:1-6, Doc. No. 34-5).

[7] Furthermore, the Plaintiff failed to set forth evidence to show a custom or policy of PHS employees permitting correctional officers to detain and abuse prisoners in their facility.  PHS could only be liable for such an injury if it was caused by a PHS custom or policy.  Monell, 436 U.S. at 694.

13